## FOSTER MACH. CO. v. UNIVERSAL WINDING CO.
### No. 3214.

Circuit Court of Appeals, First Circuit.
June 1, 1937.

E. Clarkson Seward, of New York City (J. L. Stackpole, of Boston, Mass., on the brief), for appellant.

George P. Dike, of Boston, Mass. (Dike, Calver & Gray, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the federal District Court for Massachusetts in an equity suit for infringement of United States Letters Patent, No. 1,749,355, applied for February 25, 1929, by Franklin Augustus Reece and issued March 4, 1930, for traversing means for winding machines, now owned by the plaintiff, the Universal Winding Company. In the District Court claims 4, 5, 6, 8, and 10 were held valid and to have been infringed by the defendant, the Foster Machine Company.

The defendant concedes the validity of the patent, but contends that the claims should be construed as limited to the specific means disclosed in the specification, and, as thus limited, are not infringed. The claims in issue read as follows:

"4. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of crossing and connecting helices, and means at a crossing point to control the passage of the yarn through the crossing.

"5. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of oppositely extending crossing helices, and means at a crossing point to control the direction of the yarn at the crossing.

"6. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of crossing and connecting helices, and means at a crossing point to maintain the strand in that portion of the groove in which it is traveling and prevent it being diverted into the other portion of the groove."

"8. A traversing-means for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of opposite crossing helices, a portion of the groove at a crossing being deeper than the opposite portion of the groove at the crossing, and means at a crossing to prevent the strand being diverted from the direction in which it is traveling."

"10. A strand-traversing device for winding machines comprising a rotating element having on its peripheral surface a strand receiving and guiding groove consisting of oppositely extending crossing helices with a portion of the groove at a crossing cut away on its edge to prevent the strand as it travels in one direction in the groove being diverted into the oppositely extending portion of the groove."

The plaintiff's device consists of a roll or cylinder grooved spirally in one direction and likewise in the other, both spirals being connected at each end of the cylinder and forming a continuous groove in both directions for the entire length of the cylinder, except at the crossing points where the shallower groove, returning from either end of the cylinder to the center, crosses the interfering deeper or outgoing groove. The deeper groove going out from the center is of uniform depth, while the shallow groove returning from the ends to the center ranges from the depth of the deeper groove to a very slight groove on the periphery of the cylinder as it reaches the edge or crossing of the deeper groove. It then continues on the further side of the deeper groove where its depth gradually grows deeper when again it rises as before on approaching the edge or crossing of a deeper groove.

It is thus seen that, as the shallow groove becomes more shallow at the periphery of the cylinder and approaches the edge or crossing of the deeper groove, the shallow groove at that point is interrupted until the opposite side of the deeper groove is reached, where it proceeds for a very short distance in the shallow form and then begins to deepen, after which it again rises, as before stated, on approaching the crossing of the next deep groove. There are three points where the deep groove is thus intersected or crossed by the shallow groove in its advance from the right-hand end of the cylinder to the center and four points where the shallow groove crosses the deeper one in its advance from the left end of the cylinder to its center.

Inasmuch as, in the plaintiff's construction, the shallow groove near the periphery of the cylinder and at a slight depth (1/16 of an inch) intersects the deep groove on both its approach to and departure from that groove, there is, as a consequence, there formed a sharp point of like depth, and this point, unless removed by chamfering, would interfere with the passage of the yarn in the shallow groove and turn it into the deeper one, causing it to change its winding course on the spindle or cone. To obviate this the plaintiff, in its device, chamfered this point for 1/16 of an inch and for a short distance in advance sloped the right-hand side from the vicinity of the bottom of the shallow groove, thus forming a wall and gap so that the yarn on passing the crossing would be carried into and follow the course of the shallow groove and not that of the deep one.

The mode of operation of the Reece roll, when used in a winding machine to transmit the yarn from a bobbin to the spindle or cone of the machine, is as follows: The yarn from a supply bobbin passes through a tension on the winder over the cylinder and on to the spindle or cone on which it is to be wound. The yarn lies tangentially in the groove of the cylinder and contacts with it through an arc of about 120 degrees. As the cylinder and spindle revolve together, the yarn, guided by the walls of the groove in which it lies, moves back and forth endwise of the cylinder and is wound upon the spindle. The angle of the yarn with respect to the axis of the roll varies constantly as the distance from the middle of the roll increases. When the yarn is in the middle of the roll, it makes a right angle with the axis of the roll, but when the yarn is at either end of the roll it makes an acute angle. This change of angle is important because at certain times it makes the yarn pull across one wall of the groove and at other times across the other wall. For example, if we start at the middle of the roll with the yarn in the deep groove, it travels to the left end of the roll remaining always in the deep groove and being drawn across the edge of the groove in the direction of the middle of the roll. In its course to the left, as it passes through each crossing, it rides along the inside edge of the deep groove uninterrupted, without being diverted into the flaring entrance of the shallow groove. Having reached the left end of the roll, it passes from the deep groove into the shallow one for its return trip. When the yarn is in the shallow groove approaching the first crossing of a deep groove, the sloping bottom of the shallow groove lifts it over the deep groove, and when it is across that groove, the sharp point of intersection having been chamfered, the flaring entrance to the shallow groove carries it forward into the succeeding portion of the shallow groove without interruption. The yarn, thus resting tangentially in the shallow groove, continues on and over the second, third, and fourth crossings, at each of which the construction and mode of operation is the same as at the first crossing. After leaving the center or fourth crossing, the yarn proceeds in the groove of maximum depth until it reaches the right end of the roll where it passes into the connecting and returning shallow groove and continues on to the point of starting at the center of the roll. In its course the yarn has approached and crossed the deeper channel seven times.

It was the chamfering of the side wall of the shallow groove slopingly back to the wall of the deeper one, thereby doing away with the point of intersection beyond a crossing and at the same time producing the flaring entrance to the shallow groove, taken in connection with the special arrangement and use made of the deep and shallow grooves, that rendered Reece's device a new and useful traverse means for winding yarn on a spindle or cone.

Up until the time of the Reece invention, no traverse rolls having helical crossing grooves had been made that were operative and useful devices without being provided with a reciprocating guide operated by a cam, which was incapable of being run at a high rate of speed. In the District Court, in discussing this, the court said:

"As the prior art stood when the Reece patent was granted, the ordinary method of presenting the thread to the roll was by what is called a 'reciprocating guide,' which traveled back and forth along the length of the roll, laying successive turns until the package was complete, 'package' being the common term, or one of the common terms, by which the thread, closely packed on its spool or core, is designated. This method of winding was effective, but not as speedy as some producers desired. Reece, at the request of the plaintiff, turned his attention to the production of a speedier device.

"Besides the reciprocating guide, the prior art also suggested that the thread could be presented to the spool by a revolving wheel or roll in contact with the spool

or in close proximity to it, so grooved as to lead the thread back and forth as the roll revolved. This was the method described by a patent to Hill and Brown, No. 322,451, granted July 21, 1885, in which a grooved * * * drum guided the thread to the package as it revolved, the groove making but a single turn over the surface of the wheel [drum], so that there was no problem of intersections. As such a drum must be of sufficient diameter to carry the thread through several turns around the package at each revolution, the size of the device made it unsuitable for winding at high speeds.

"A patent to Wilcox, No. 477,196, granted June 14, 1892, for an improvement in fishing-reels, although not in the winding-machine art, came somewhat closer to the invention here considered. Wilcox devised a roll, traversed by a groove running in right and left spirals, to guide a fishing line onto a reel, and he suggested that the groove in one direction should be somewhat deeper than that in the other direction. The plaintiff's expert Armington testified that he had made a model of a roll grooved according to the description in the Wilcox patent, but could not make it work."

Continuing, the District Court said:

"The real suggestion for what Reece was destined to accomplish came, not from the foregoing devices, but from a roll designed by Dickerson G. Baker. Baker had conceived the idea of dispensing with the reciprocating guide ordinarily used and substituting for it a cylindrical roll, grooved in such a way as to guide the thread back and forth along the axis of the package. His groove ran from one end of the roll to the other and back again in two spirals, one from right to left, the other from left to right, at an *even depth*. The two spirals necessarily crossed each other at several points on the roll, and Baker found, in the operation of the device, that the thread tended to take the wrong direction at a *point of intersection*. Instead of following the proper groove for the whole length of the spiral, the thread turned back in the other direction, so that it covered only a narrow area in the center of the package. Baker, who testified at the trial, said that he was unable to overcome this difficulty; and he finally designed an auxiliary guiding device which, by means of a cam, kept the thread in its proper path. For this combination of roll and auxiliary guiding mechanism, he obtained a patent, and a machine was built

which was operated for about a year and a half, and then abandoned. [Italics supplied.]

"Reece saw, or is charged with knowledge of, the possibilities of the Baker roll, and studied the problem of the intersections. In discussing what he did, it is more convenient to speak as if there were two intersecting grooves, although in fact there is but one endless groove traversing the roll in two intersecting spirals.

"Reece found that it was necessary to modify one groove at each intersection. What he did was to shallow it at either side of the intersection by sloping the bottom upward to the edge of the traverse groove and down from the opposite edge, so that at the point of crossing the groove was but a sixteenth of an inch below the surface of the roll. At the same time, he flared the groove beyond the crossing by sloping away one edge—the right-hand edge as the thread travels from right to left, the left-hand edge as it travels from left to right—giving it a broad, shallow entrance. In connection with this shallowing and widening, he removed the sharp point necessarily formed by the intersection of two grooves at an acute angle. * * * With Reece's construction, the thread follows its proper groove. When traveling in one direction, it is lifted by the slope of the groove above the level of the transverse groove, is carried across it, and is immediately captured by the flared edge beyond the crossing, which guides it into its proper path. Traveling in the other direction, the thread remains in the deep groove, unaffected by the intersection."

The District Court regarded the step taken by Reece over Baker as a simple one. He found, however, that "he [Reece] took the step which carried the device over the gap between failure and achievement"; and continuing said:

"Indeed, the defendant does not press the defense of invalidity. At the trial and in the defendant's brief, validity was virtually conceded. Two men, skilled in the art, witnesses in this case, testified that it was the most significant improvement in winding machinery that had occurred for 50 years. With machines using the Reece roll there is a marked increase of speed and hence of output, a substantial decrease in expense for repairs, and an elimination of the roughening or chafing of the fibers of the thread that is sometimes caused by its passage through the eye or hook of the

earlier guiding devices. These advantages are not controverted by the defendant."

The defendant, in its brief and argument of the case, takes the position that the scope of the patent should not be enlarged, but should be limited to the specific construction shown in the specification and that the defendant's device should not be held to infringe.

It bases its contention largely on what took place in the Patent Office, as disclosed by the file wrapper. We do not think that what took place there requires that the claims granted should be restricted in scope on that account. The Wilcox fish-line reel, though it had helical grooves of different depths, would not work without special manipulation of the rod by the fisherman handling the line. And, on the evidence, the District Court found that as a device to wind yarn in a winding machine it would not work. That device did not have as outgoing grooves from the center of the cylinder the deeper ones, and as incoming grooves the shallower ones. The deeper groove ran the length of the cylinder one way and the shallower one the length of it the other way. The most that can be said of what took place in the patent office is that the patentee conceded the use of such grooves arranged as there shown on a roll was old in the art (at least for making fishing reels), and that, if the plaintiff's device consisted only of those elements as there shown, it would not be invention. But the claims granted were for a device embodying a rearrangement of the grooves and additional elements, the combination of which worked a material advance in the art of traverse means for winding machines.

The District Court did not regard the claims as entitled to a broad construction, but only to a reasonable one, having in view the progress made in the art. We think the plaintiff is entitled to such a construction, but regard it unimportant in this case in order to find that the defendant's device infringes.

The defendant's device embodies no element essential to its operation not found in the plaintiff's device. It presents some changes, differences of degree and of an immaterial character. The defendant adopted outright the provision of the plaintiff's patent that the outgoing groove in either direction from the center of the cylinder should be the deeper groove and the incoming groove from either end should be the shallower one. It, like the plaintiff's device, had no intersecting point to interrupt the proper travel of the yarn beyond the crossing. It did away with it by not having the shallow groove at the surface of the cylinder extend quite to the edge of the deep groove on either the approaching or departing side of that groove. It had a wide jaw or flared edge in the shallow groove beyond the crossing to gather in the advancing yarn, perhaps a little wider and a little further away from the crossing.

The operating elements of the two devices being the same or substantially so and the mode of operation and result being the same, infringement follows. By such a colorable attempt to evade the construction of the plaintiff's device and claims, the defendant did not escape infringement.

The decree of the District Court is affirmed, with costs to the appellee.